Good morning, Your Honor. So, Reet Levitt on behalf of the petitioner in this case. May it please the Court, the issue before this Court today is whether the immigration judge and the Board of Immigration Appeals have jurisdiction over the review of a SAW application that was denied by the former INF, and if so, under what legal basis. I start with the Immigration and Nationality Act, Section 210.2, that provides that in the event that a SAW application is denied by the INF, the alien is entitled to administrative appellate review. The same section under Subsection 3, E3, provides for judicial review. It says that there shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation under Section 106, as in effect prior to October 1, 1996. Also in McNary, the Supreme Court decision of 1991 and some of the Ninth Circuit court decisions that followed, it was held that an alien who wishes to seek judicial review of his SAW application must wait until placed in deportation proceedings to seek judicial review with the Court of Appeals. IHRA doesn't affect the judicial review provision. Section 210, E3A provides that there shall be judicial review of such denial only in the judicial review of order of exclusion or deportation under Section 106, as in effect prior to 1996. So therefore, IHRA has left the provision there and provided that extra sentence. But the argument is that in order for the Court of Appeals to be able to review a SAW application, the application must be brought before the immigration judge and included as part of the administrative record on which the deportation order is based. If not, it's not part of the administrative record, which means it's impossible for the Court of Appeals to review it. The old Section 106 of the Immigration Nationality Act provided that a petition shall be determined solely upon the administrative record upon which the deportation order is based. Also, the new section, which replaced it, 242B4A, provides an identical provision that says that the Court of Appeals shall decide the petition only on the administrative record on which the order of approval is based. If you look at the Federal Rules of Appellate Procedure, Section 16A, the administrative record must include the order sought to be reviewed or enforced and the findings or report on which it's based, and the pleadings, evidence, and proceedings before the agency. Under the U.S. Code, Title 28, Section 2347A, this is a section which prescribes the exclusive procedures for judicial review of all final orders of deportation or removal. It says that petitions to review orders reviewable under this chapter are heard in the Court of Appeals on the record of pleadings, evidence, and proceedings before the agency when the agency has held a hearing. So unless a SAW application is admitted during deportation or removal proceedings, the SAW application and its supporting documents cannot be reviewed by the Court of Appeals because it's not part of the administrative record on which the order is based. Also -- SOTOMAYOR Where are we going here, Counsel? We know that the immigration judge was not supposed to review the SAW decision. Isn't that correct? Well, our argument is that the immigration judge was supposed to review it, because if he didn't, then what would the Court of Appeals be looking at in order to review the determination? Well, but we are supposed to look at it. So at least that's the way it appears to me. SOTOMAYOR Right. And that's the way that the statute is written. But then the statute also says that the Court of Appeals can base their review only on the record on which the order is based. If you look at that, the administrative record that's before the Court today is not that on which the judge determined that the person is deportable or removable. Now, let's get real here. Now, it seems to me that one way or another, we have jurisdiction to review the SAW proceedings. And that we should just move to that and do it. Right. But then you wouldn't be going according to the legislation which provides for judicial review. So what would happen then? We've got the I.J. saying that he's deportable. So what are we supposed to do? If we can't look at the other part, what do we do? Well, that's exactly it. I think there's got to be... Well, what do you want us to do? I think the case should be remanded for the immigration judge to provide, to make a determination on the SAW application. But the rules say he's not supposed to do that. But the rules also say that the court of appeals can only base their decision on the record of the immigration judge. Judge Fletcher says, why don't we just go directly to the SAW determination? Because what I'm saying is, well, first of all, the rules don't allow for it because you don't have an administrative record to go on. Well, would you give us your argument? I'll be very blunt with you. The problem is the application is not very persuasive and appears that the employer withdrew his affidavit and so forth. What does he get to say for himself when we get to the merits? At the court of appeals level? Yes. Assume we have jurisdiction to look at the SAW proceeding. So tell us what's flawed about that. I think what's flawed about that is that the immigration service or the INS decided that he's not credible based on the fact that he only submitted affidavits and based on some evidence that they had found that suggests that the employer's affidavit is not credible. The problem with that is when you go back, when the petitioner goes back and tries to rebut that, the only possible rebuttal for that is just another affidavit from the employer. What else can he provide to show that the government? Did he get a different affidavit? Yes, he did. You mean the employer first withdrew it and then said, yes, I did employ him? No. What happened is the petitioner provided an affidavit from the employer and then the government came back and said, no, we have this letter from the employer saying that a lot of these letters are forged. And that was where the case stopped, isn't that right? No. And at that point, the petitioner provided another affidavit from the employer saying that he did employ this. He didn't actually say in that third one that he had employed him. In the second one. No, but in the third, the final one. In the final one, if I may look at my, I believe it's page 75. The one submitted March 25th, 1991 on page 75 has the name of my petitioner on it. And it says that I understand the purpose of this letter is to verify this individual's employment by me in connection with an application for immigrant visa. But does he ever say when he was employed? He just gives a general specification of when he employed these employees. He doesn't say exactly when at the second one. But he does say at the first on the first affidavit when the government's position is that. Well, go ahead. Finish your thought. The government's position is that, well, if he would have said something about the letter that we have in the record that a lot of my signatures were forged, then it would be more credible. I don't understand how it would be more credible at that point. It would just be the same affidavit from the same person notarized. Well, see, what he did, as I recall from what he did, the employer did was in the original application, he signed the original form specifying when Mr. Martin had worked for him. And then he also submitted an affidavit at the same time. And shortly thereafter, there's this other declaration or whatever it was where the employer says, you know, there's all this fraud. It was in connection with the grand jury, some sort of grand jury proceeding that was taking place. And he writes a letter and he says there's been allegations of fraud. And I and I've never I've never there's been allegations that there's some of these applications have been that my signature has been used fraudulently. But in there, he never comes back and says that the app that Mr. Martin's. There's never any specificity that there was fraud involved in Mr. Martin's application. Exactly. That's that's my point, that there was no although the INS provided a letter saying that my signature has been forged, there was never any specification that my that the petitioner in this case has provided a fraudulent affidavit or or letter of employment. Let me ask you this. Does LA does the legal legalization appeals unit, do they do any kind of investigation when these matters are submitted to them? Do you know? I don't know if generally they do or they do. They did or didn't. But I know that in this case they didn't, because with the second affidavit that was provided after the government provided their, you know, their proof of fraud or whatever the with the second affidavit, there was, you know, contact information. You could contact the employer, a simple phone call or a visit and ask him, did this person ever work for you? That would have ended all of the allegations of fraud or. Was this Mr. Ramirez under some sort of investigation by the. I'm not aware of that for some sort of fraudulent activity. I'm not familiar with that. I don't know. OK, so you're relying on the March 25, 1991 letter. And how did the SAR people treat that? They said that it's not credible based on it doesn't overcome their their information in the file and it's not credible. Had it included something in reference to the information they had in the file, it would have been more credible. Now, it's true that he just gives the harvesting period of April 15th, October 20th, from 85 to 98, 1988, without, I believe, specifying the exact period that your client worked. Is that correct? Is it not? It doesn't specify the exact period that my client worked, but I believe that was specified in the previous letter. In the form in the in the form he specifies when he worked. It seems to me this whole process was meant to be pretty informal. And that board was supposed to deal with the facts. Can we really say that we we know more than they do about who's credible? Well, I think in this case, based on the record that we have. I think they abused their discretion in deciding that that that he's not credible because there's nothing particular to him that provides any any any proof of fraud on his part. If they had something against the employer in the file, why didn't they verify it? My client was in no position to to verify it for them, provided whatever he could from the employer. OK, thank you. Good morning. May it please the Court. Opposing counsel. My name is Elizabeth Stevens for the Department of Justice representing the Attorney General. I'd like to address three separate issues. The first one is jurisdiction. The statute, the SAW statute, specifically allows for only one level, one single level of administrative review. And that is at 210 E2A. Therefore, Mr. Perez-Martin did have the single level administrative review provided by the statute in the LAU proceedings. In front of the board and the immigration judge were perfectly correct in finding that they had no jurisdiction under the statute to review it. How does it get to this court? How do you have jurisdiction over the record? Again, 210 E provides that standard because it says that you will have judicial review of a decision under this when it is combined with a decision for deportation. And that's how both records come to this court, so that you have jurisdiction to review this case and to review the LAU's determination of Mr. Perez-Martin's application. So you have no concern about our looking back to the SAW decision and reviewing that? No. That is under the statute and under both the decisions of this court, the jurisdiction over 245A, other legalization proceedings, Ortiz, Proieto-San Pablo, those decisions all state that the review of a SAW application is in these proceedings. Now, the two proceedings are entirely separate. One of the whole things of the SAW application process was that people who came forward and put forth applications in this would not be put into deportation proceedings or removal proceedings. That is why there was really a Chinese wall built between the SAW application units and the deportation and removal units, so that they couldn't get this information to be used in deportation proceedings. The only reason there's any record of this in the actual removal proceedings that started in 1999 is because the Petitioner himself put – filed that as evidence in his removal proceedings that started in 1999 after he was picked up in some – in some form. The SAW application itself, there are two things. There are two things that I'd like to talk about in the SAW application. One is burden of proof. One is standard of review. In a SAW application process – in the SAW application process, the Petitioner himself has the burden of proof to establish sufficient evidence to show that he was employed during the – during six months up until I believe it's 1980 – in – during the periods of 1980 up to 1985. And that's a very particular – particularly important date. It has to be six months of agricultural work prior to October of 85, I believe. And if they have actual records from their employment, those are usually more than enough to suffice to fill that burden of proof. However, in cases – and Congress knew this when they wrote the statute – in cases where there is not any documentary evidence, you can go forward on affidavits from employers or whatever, and the burden on the alien is first that he has sufficient evidence so that a just and reasonable inference can be made that he did perform the work requested. Then the burden shifts a little bit to the service. And all the service has to provide in this to rebut that initial showing is that the inference drawn from the evidence is not reasonable. They don't have to show that the evidence itself is false or anything else, but any inferences that that work was actually performed are not reasonable. And I submit to the Court that this is exactly what has happened in this case. Well, would you agree, then, applying those burdens here that Mr. Perez-Martin met his initial with his application and with Mr. Ramirez's signing off on the form and specifying the time period that he worked and then the affidavit that came later? Partially, because there are indices of fraud and unreliability in the affidavits that are submitted in the initial application. In the initial, before the service, before? One of them says he worked for me from May to October. One says May to May. They have different addresses. They have different ways of saying his name. This is the same person. One also said that he paid him in cash.  But it has different addresses of the employer. It has different dates. So those two do not necessarily establish a reasonable inference that this was actually something that happened. Then when Mr. Ramirez was testifying before the grand jury, he withdrew his statement says that he withdraws all affidavits that have been submitted in my name. But he limited it sort of to he qualified it by saying something about fraud. I understand there have been fraud. He talks about forgery, doesn't he? Or forgery. Yes. But there's something very odd about this case. I looked at his signature on his saying that all of these were forgeries. And then I look at the signatures on the affidavits that Martin had. It's the same signature. I'm no handwriting expert, but these are exactly alike. There are some similarities in the signatures and there are some differences. So I think that probably Ramirez was probably lying to get out of a bad situation. Perhaps he had been giving fraudulent affidavits, but they weren't forgeries. So what do we do with that? That's not in the record before us. Well, it is. It is in the record. As far as the inferences we can make from that, we don't know what the rest of the investigation into Mr. Ramirez showed, whether he was involved in actual fraudulent affidavits or somebody forged his name. I don't have that in the record. Well, I think we can tell that they weren't forgeries. I would also like to point the Court's attention to the alleged address of the employer changes on every single one of these documents. It's different. It's 970. It's 170. It's 970, 770, 170. The name of the street changes from time to time. Every single one of these are different. And the last one, the 1991, is the one that has the street completely different from anything else that's been submitted. Well, there may be fraud, but I don't think there was forgery. So I don't know what to make of that. But let's go back to what the burden of proof is. What does the service have to submit? Evidence that shows that any inference drawn from the evidence submitted is not reasonable. And then it goes back, and the burden of proof goes on the petitioner to show, by a preponderance of the evidence, that he was indeed eligible for such a thing. The legalization examiner, after an interview with Mr. Perez-Martin, determined that it was going to be notice of intent to deny should be recommended because of suspected fraud with the berry farms. With this particular berry farm, over 2,700 people said that they'd worked at this particular berry farm during three years and that they worked there for the sufficient six months to be eligible for legalization under this law. They sent out the notice of intent to deny, gave Mr. Perez-Martin an opportunity to submit additional evidence, and he submitted this 1991 letter that says nothing about the affidavit that Mr. Ramirez had presented two years ago. So then they denied it. He appealed it to the Legalization Appeals Unit. That is his administrative review. They looked at all of the evidence presented and again found that Mr. Perez-Martin had not satisfied his burden of showing by a preponderance of the evidence that he was eligible for SAW legalization. The standard of review for this court to review that determination by the Legalization Affairs Unit is, if we go back to the statute, again, it shall be based solely on the administrative record established at the time of the review and the findings of fact and determinations contained shall be conclusive unless of use of discretion or that the findings are directly related to the statute. It shall be solely contrary to clear and convincing facts contained in the record considered as a whole. And it is the position of the government, and I present to this Court, that that burden has not been shown in this case, that there is no clear and convincing evidence that Mr. Martin was eligible for SAW, and therefore we request that the Court deny the petition for review. Thank you. One minute for rebuttal. Thank you, Your Honor. I think in terms of the merits of the application, I think the service hasn't proved that the petitioner in this case has been part of any fraud or that the letters submitted by the employer were forged and therefore the petitioner abused their discretion in denying the petitioner's application without really no real basis for it. Okay. Thank you. The matter will stand submitted. The next case on the calendar is United States.
judges: B. Fletcher, Noonan, Paez